## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                              :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| PROLIANCE INTERNATIONAL, INC., *et al.*,[1] | : | Case No. 09-12278 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

## ORDER AUTHORIZING AND APPROVING
## (I) THE SALE OF CERTAIN ASSETS FREE AND CLEAR
## OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES;
## (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES; AND (III) RELATED RELIEF[2]

Upon the motion of the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, 6006,

9007 and 9014 (the "Bankruptcy Rules") and Local Rule 6004-1 of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), for entry of an order authorizing and

approving, among other things, (i) the sale of certain assets free and clear of liens, claims and

encumbrances, (ii) the assumption and assignment of executory contracts and unexpired leases

and (iii) related relief (Docket No. 19) (the "Motion")[3] and the Order (A) Approving Bidding

---

[1]     The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Proliance International, Inc. (7383); Aftermarket Delaware Corporation (9862); Aftermarket LLC; and Proliance International Holding Corporation (9275). The address of each of the Debtors is 100 Gando Drive, New Haven, Connecticut 06513.

[2]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

[3]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or Purchase Agreement, attached as Exhibit A hereto.

Procedures For The Sale Of Certain Assets, (B) Authorizing The Debtors To Offer Certain Bid Protections and (C) Scheduling Final Sale Hearing And Approving Form And Manner Of Notice Thereof (Docket No. 137) (the "<u>Bidding Procedures Order</u>"); and it appearing that due and appropriate notice of the Motion, the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing, and the assumption and assignment of the Assumed Contracts has been provided; and it appearing that no other notice of the relief granted by this Order need be given; and the Court having conducted a hearing on the Motion on August 13, 2009 (the "<u>Sale Hearing</u>") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Debtors having conducted a marketing process in compliance with the Bidding Procedures Order and determined that the Buyer has submitted the highest and best bid for the Purchased Assets; and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the Sale Transaction and the Purchase Agreement; the assumption and assignment of the Assumed Contracts; and this Court being fully advised in the premises; this Court, based upon the arguments, testimony and evidence presented to it, hereby makes the following Findings of Fact and Conclusions of Law.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the

Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.     This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.     The statutory predicates for the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rule 6004-1.

E.     The Purchased Assets and the Assumed Contracts are property of the Debtors' Proliance International, Inc. ("Proliance"), Aftermarket LLC ("Aftermarket") and Proliance International Holding Corporation ("PIHC," and, together with Proliance and Aftermarket, the "Sellers") estates and title thereto is vested in the Sellers.

F.     As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Sale Hearing, the Sale Transaction, the Auction, the Bid Deadline, the assumption and assignment of the Assumed Contracts and the Cure Amounts as approved herein has been provided in accordance with Bankruptcy Rules 2002, 6004, 6006 and 9014, (ii) such notice was good, sufficient and appropriate under the circumstances and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale Transaction, the Auction, the Bid Deadline or the assumption and assignment of the Assumed Contracts as provided herein is necessary or shall be required.

G.     On July 23, 2009, the Debtors filed the Assumption and Assignment Schedule with the Court and served a copy of the Cure Notice on each party to an Assumed Contract.

H.     A reasonable opportunity to object or be heard with respect to the Motion, the Sale Transaction and the assumption and assignment of the Assumed Contracts has been

afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel for the Buyer, (iii) counsel for the Committee, (iv) counsel to the Debtors' prepetition secured lenders, (v) all entities known to have expressed an interest in the proposed sale with respect to the Purchased Assets, (vi) all entities known to have asserted any Lien upon the Purchased Assets, (vii) all counterparties to the Assumed Contracts, (viii) the United States' Attorney's Office, (ix) the United States Department of Justice, (x) the Securities and Exchange Commission, (xi) the Internal Revenue Service, (xii) the Pension Benefit Guaranty Corporation and (xiii) all other parties who filed requests for notice under Bankruptcy Rule 2002 in these cases.

I. The Debtors did not receive any Qualified Bids, other than the Buyer's Qualified Bid, prior to the Bid Deadline. Accordingly, pursuant to the Bidding Procedures Order, no Auction was conducted by the Debtors, and the Buyer was deemed the Successful Bidder with the highest and best offer for the Purchased Assets.

J. The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

K. The Purchase Agreement was negotiated, proposed and entered into by the Sellers and the Buyer without collusion, in good faith and from arms'-length bargaining positions. Neither the Sellers nor the Buyer have engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

L. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing,

the Debtors afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bidding Procedures and to submit an offer for the Purchased Assets.

M. The Buyer is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

N. The consideration provided by the Buyer for the Purchased Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for all of the Debtors' stakeholders than would be provided by any other practical available alternative and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

O. The Buyer is not purchasing all of the Sellers' assets. The Buyer is purchasing only the Purchased Assets. The Buyer is not purchasing the Excluded Assets.

P. The Sellers are not assuming and assigning all of their contracts and leases to the Buyer. The Sellers are only assuming and assigning the Assumed Contracts to the Buyer. The Sellers are not assuming and assigning any contract or lease that is an Excluded Asset to the Buyer.

Q. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Purchase Agreement, sell the Purchased Assets and assume and assign the Assumed Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their estates and their creditors. As more fully set forth in the Motion and as demonstrated at the Sale Hearing, such business reasons include, but are not limited to, the fact that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the sale of

the Purchased Assets to the Successful Bidder free and clear of all liens, claims, interests and encumbrances (the "<u>Sale Transaction</u>") is not consummated quickly, (ii) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets, (iii) the Purchase Agreement and the Sale Transaction present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business and (iv) creditors' recoveries may be diminished unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement.

R.    Assumption and assignment of the Assumed Contracts is in the best interests of the Debtors' estates and their creditors. The Debtors have complied with the provisions of the Bidding Procedures Order regarding the provision of notice to the counterparties of the Assumed Contracts of the proposed assumption and assignment of the Assumed Contracts and the related Cure Amounts. Such notice was sufficient to provide all counterparties an opportunity to object to the proposed assumption and assignment of the Assumed Contracts. All counterparties that have not objected to the proposed assumption and assignment of the Assumed Contracts are deemed to consent to the assumption and assignment of their respective Assumed Contracts and to the Cure Amounts.

S.    The Sellers have full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase Agreement, to perform their obligations therein, and to consummate the Sale Transaction. No other consents or approvals are necessary or required for the Sellers to enter into the Purchase Agreement, perform their obligations therein and consummate the Sale Transaction.

T.    The Buyer would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, the Debtors' estates and

the Debtors' creditors, if the Sale Transaction and the assumption and assignment of the Assumed Contracts were not free and clear of all liens, claims, interests and encumbrances or if the Buyer would, or in the future could, be liable for any of the Liens.

U.      The provisions of section 363(f) of the Bankruptcy Code have been satisfied. All holders of Liens who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1.      The relief requested in the Motion is granted and approved in all respects. The Purchase Agreement, the Sale Transaction and the assumption and assignment of the Assumed Contracts are hereby approved in all respects. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.      The Sellers are authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction (including, without limitation, to convey to the Buyer any and all of the Purchased Assets and the Assumed Contracts intended to be conveyed) and the Closing in accordance with the Motion, the Purchase Agreement and this Order, and (b) perform, consummate, implement and close fully the Sale Transaction, the assumption and assignment of the Assumed Contracts and the Closing, together with all additional instruments and documents, including the Transition Services Agreement (as defined below), that may be reasonably necessary or desirable to implement the Purchase Agreement.

3.      Those (a) holders of Liens and (b) non-Debtor parties to Assumed Contracts who did not object, or who withdrew their objections to entry of this Order, the Motion, the Bidding Procedures Order, the Sale Hearing, the Sale Transaction and the Purchase Agreement are

deemed to have consented to this Order, the Bidding Procedures Order, the Sale Transaction and the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code. Those (a) holders of Liens and (b) non-Debtor parties to Assumed Contracts who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert a Lien.

Sale and Transfer of the Purchased Assets

4. Upon the Closing, the Purchased Assets transferred, sold and delivered to the Buyer shall be free and clear of all Liens (including, without limitation, all Retained Liabilities) of any person or entity that encumber or relate to or purport to encumber or relate to the Purchased Assets, other than Permitted Liens or Liens on the assets of any non-Debtor. The transfer of the Purchased Assets to the Buyer constitutes a legal, valid and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title and interest of the Sellers in and to the Purchased Assets. The Purchased Assets do not include consigned goods held by the Debtors pursuant to consignment agreements, including, among others, the consigned goods held by the Debtors pursuant to that certain Consignment Agreement between Norca Heat Transfer, LLC and Proliance.

5. Upon Closing of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Buyer pursuant to the terms of the Purchase Agreement.

6. Effective on the date of entry of this Order, except for Permitted Liens and the Assumed Liabilities, all entities, including, but not limited to, the Debtors, creditors, employees,

former employees and shareholders, the non-Debtor parties to the Debtors' executory contracts and unexpired leases, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, maintaining any authority relating to environmental laws, and their respective successors or assigns, including, but not limited to, persons asserting any Lien against the Debtors' estates or any of the Purchased Assets, irrespective of any action commenced which contests the Sellers' authority to sell and transfer the Purchased Assets or which seeks to enjoin such sale and/or transfer, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer as alleged successor or otherwise with respect to any Liens on or in respect of the Purchased Assets or arising out of or related to the Sale Transaction.

7.     Each and every term and provision of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including, but not limited to, the Sellers, the Buyer, creditors, employees, former employees and shareholders, the non-Debtor parties to the Sellers' executory contracts and unexpired leases, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, maintaining any authority relating to environmental laws, and their respective successors or assigns, including but not limited to persons asserting any Lien against or interest in the Sellers' estates or any of the Purchased Assets or the Assumed Contracts, irrespective of any action commenced which contests the Sellers' authority to sell and assign the Purchased Assets and Assumed Contracts, or which seeks to enjoin such sale and/or assignment, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

8.      Except for Permitted Liens and the Assumed Liabilities, all entities holding Liens of any kind and nature be and hereby are barred from asserting such Liens against the Buyer and/or the Purchased Assets and, effective upon the transfer of the Purchased Assets to the Buyer upon Closing, the Liens shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as the Liens formerly and against the Purchased Assets.

9.      This Order (a) is and shall be effective as a determination that, upon Closing, all Liens (including, without limitation, all Retained Liabilities) existing as to the Purchased Assets conveyed to the Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the Buyer. All Liens of record as of the date of this Order shall be forthwith removed and stricken as against the Purchased Assets. All entities are authorized and specifically directed to strike all such recorded Liens against the Purchased Assets from their records, official and otherwise.

10.     If any person or entity which has filed financing statements, mortgage, mechanics liens, lis pendens or other documents or agreements evidencing Liens on the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases

of liens and easements and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Purchased Assets, or the Assumed Contracts, the Sellers are hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets and the Assumed Contracts. Upon Closing of the Sale Transaction, each of the Sellers' creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Liens against the Purchased Assets and the Assumed Contracts.

11.    Upon consummation of the transactions contemplated by the Purchase Agreement, the Buyer shall not be deemed to be (a) a successor to the Sellers, (b) a <u>de facto</u> merger of the Buyer and the Sellers, (c) a mere continuation of the Sellers or (d) liable for any acts or omissions of the Sellers in the conduct of their businesses. Except as specifically provided in the Purchase Agreement, the Buyer shall have no liability or responsibility for any obligations of the Sellers arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as specifically provided in the Purchase Agreement, the Buyer shall not be liable for any claims against the Sellers or any of their predecessors or affiliates, other than as expressly provided for in the Purchase Agreement.

<u>Assumption and Assignment of the Assumed Contracts</u>

12.    The Debtors are hereby authorized, in accordance with section 365(b)(1) and 365(f)(2) of the Bankruptcy Code, to (a) assume the Assumed Contracts, (b) sell, assign and transfer to the Buyer each of the Assumed Contracts, in each case free and clear of all Liens (including, without limitation, all Retained Liabilities) and (c) execute and deliver to the Buyer such assignment documents as may be necessary to sell, assign and transfer the Assumed

Contracts. Upon Closing, the Assumed Contracts shall be deemed assumed by the Debtors and assigned to the Buyer.

13.     The Buyer has (a) cured, or will cure, or has provided adequate assurance of cure, any default existing prior to the date hereof under any of the Assumed Contracts set forth in Schedule 2.5(b) of the Purchase Agreement, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (b) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss suffered by such party as a result of a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Further, the Sellers have cured or will cure, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts set forth in Schedule 2.5(a) of the Purchase Agreement within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and the Sellers are hereby authorized to pay any Cure Amounts in respect of Assumed Contracts set forth in Schedule 2.5(a) of the Purchase Agreement from cash on hand in the Debtors' concentration / disbursement account at Wachovia Bank with the account number ending in 3175 (the "Wachovia Concentration Account"). The Buyer has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. The only adequate assurance of its future performance of and under the Assumed Contracts required by the Buyer shall be the Buyer's promise to perform in accordance with the terms of the Assumed Contracts with respect to obligations first arising or incurred following the Closing.

14.     With respect to the Assumed Contracts, (a) upon Closing, the Assumed Contracts shall be transferred and assigned to, and shall remain in full force and effect for the benefit of, the Buyer, in accordance with their respective terms, notwithstanding any provision in any such

Assumed Contract (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, (b) pursuant to section 365(k) of the Bankruptcy Code, the Sellers shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Buyer, (c) each Assumed Contract is an executory contract of the Sellers under section 365 of the Bankruptcy Code, (d) the Sellers may assume and assign each Assumed Contract in accordance with section 365 of the Bankruptcy Code and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the non-Debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract have been satisfied and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

15.     All defaults or other obligations of the Sellers under the Assumed Contracts arising or accruing prior to the Closing of the Sale Transaction (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Sellers, or the Buyer, on behalf of the Sellers, in accordance with the terms of, but only to the extent set forth in, the Purchase Agreement, and the Buyer, or the Sellers, as applicable, shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale Transaction, except as expressly provided in the Purchase

Agreement. Each non-Debtor party to any Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts and shall be forever barred, estopped and permanently enjoined from asserting against the Sellers or the Buyer or the property of any of them, any default existing, arising or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contracts.

16.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting against the Sellers or the Buyer any assignment fee, default, breach or claim, counterclaim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the Closing. Any party that may have had the right to consent to the assignment of its Assumed Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if it failed to object to the assumption and assignment.

17.     Upon the Closing, the Assumed Contracts shall be deemed assumed and assigned and transferred to the Buyer free and clear of all Liens (including, without limitation, all Retained Liabilities) of any person or entity that encumber or relate to or purport to encumber or relate to the Assumed Contracts, other than Permitted Liens. The assumption by the Debtors and assignment to the Buyer of the Assumed Contracts is legal, valid and effective, and shall vest the Buyer with all right, title and interest of the Sellers in and to the Assumed Contracts.

18.     Effective on the date of entry of this Order, except for Permitted Liens and the Assumed Liabilities, all entities, including, but not limited to, the Debtors, creditors, employees, former employees and shareholders, the non-Debtor parties to the Debtors' executory contracts and unexpired leases, administrative agencies, tax and regulatory authorities, governmental

departments, secretaries of state, federal, state and local officials, maintaining any authority relating to environmental laws, and their respective successors or assigns, including, but not limited to, persons asserting any Lien against the Debtors' estates or any of the Assumed Contracts, irrespective of any action commenced which contests the Sellers' authority to assume and assign the Assumed Contracts or which seeks to enjoin such assumption and/or assignment, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer as alleged successor or otherwise with respect to any Liens on or in respect of the Assumed Contracts.

19.     This Order (a) is and shall be effective as a determination that, upon Closing, all Liens (including, without limitation, all Retained Liabilities) existing as to the Assumed Contracts assigned to the Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title relating to any of the Assumed Contracts assigned to the Buyer. All Liens of record as of the date of this Order shall be forthwith removed and stricken as against the Assumed Contracts. All entities are authorized and specifically directed to strike all such recorded Liens against the Assumed Contracts from their records, official and otherwise.

20.     In full resolution and any Cure Amount owing to Maple/Douglas L.P. ("Maple") under that certain Lease Agreement, dated as of October 4, 1985, by and among the Debtors, as lessee, and Maple, as lessor (the "Dallas Lease") in connection with the assumption and assignment of the Dallas Lease to the Buyer:  (a) the Debtors shall pay Maple, upon the Closing, the sum of $56,000 on account of any soil testing and removal of contaminated soil to be administered voluntarily by the Debtors pursuant to (i) that certain Texas Commission of Environmental Quality Voluntary Cleanup Program Agreement, executed on or around March of 2009, by and among the Debtors and the Texas Commission of Environmental Quality and (ii) the Dallas Lease (collectively, the "Prior Defaults"); (b) the Buyer agrees to assume any continuing obligations under the Dallas Lease other than the Prior Defaults; (c) the Buyer shall pay to Maple the sum of $25,000 to be held by Maple as a general security deposit under the Dallas Lease; (d) Maple shall indemnify Buyer for liability or damages for any environmental contamination of the property under the Dallas Lease from tenant operations occurring up to and including August 15, 2009; (e) Buyer shall indemnify Maple for liability or damages for any environmental contamination of the property under the Dallas Lease from tenant operations occurring from August 16, 2009 through the end of Buyer's occupancy of the subject property; and (f) in addition to any other monetary obligations arising on or after August 16, 2009 under the Dallas Lease, the Buyer agrees to pay $1,000 in additional rent under the Dallas Lease for each of the 14 months following assumption and assignment of the Dallas Lease beginning with rents due for the month of September, 2009.  The Limited Response of Maple/Douglas, L.P. to Debtors' Motion Seeking an Order Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (Docket No. 181) is hereby deemed withdrawn.

<u>Additional Assumed Contracts Procedures</u>

21.     Upon entry of this Order, the Debtors are authorized to serve a notice (the "<u>Supplemental Assumption and Assignment Notice</u>"), substantially in the form of the Assumption and Assignment Notice attached as Exhibit 2 to Bidding Procedures Order, to the counterparties (collectively, the "<u>Counterparties</u>") to those certain executory contracts that the Debtors seek to assume and assign to the Buyer following the Closing (the "<u>Additional Assumed Contracts</u>"). The Supplement Assumption and Assignment Notice shall include, among other things, the Debtors' calculation of the amounts that must be paid to cure all defaults under each of the Additional Assumed Contracts (the "<u>Cure Amount</u>") and the procedures described below that shall govern the assertion of any objections to the assumption and assignment of such Additional Assumed Contracts or the proposed Cure Amounts (each, an "<u>Assumption Objection</u>").

22.     Assumption Objections, if any, must:  (i) be in writing; (ii) specify the grounds for the objection to assignment and for the amount that the objecting party asserts as the proposed cure amount; (iii) be filed with the Court and served so that such objection is actually received no later than 4:00 p.m. (prevailing Eastern Time) on August 24, 2009 (the "<u>Assumption Objection Deadline</u>"), on (a) counsel to the Debtors:  Jones Day, 222 East 41st Street, New York, New York 10017, attn:  Pedro A. Jimenez, Esq. (pjimenez@jonesday.com; fax number 212-755-7306) and Ross S. Barr, Esq. (rsbarr@jonesday.com; fax number 212-755-7306), (b) counsel to the Committee:  Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, attn:  Kenneth A. Rosen, Esq. (krosen@lowenstein.com; fax number 973-597-2371) and Thomas A. Pitta, Esq. (tpitta@lowenstein.com; fax number 973-597-2371), (c) counsel to the Buyer:  Much Shelist, 191 N. Wacker Drive, Ste. 1800, Chicago, Illinois 60606, attn:  Don S. Hershman,

Esq. (dhershman@muchshelist.com; fax number 312-521-2100), (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Fax: (302) 573-6497 (Attention: Mark S. Kenney, Esq.) and (e) counsel to the Debtors' prepetition secured lenders: Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, attn: Paul V. Shalhoub, Esq. (pshalhoub@willkie.com, fax number: 212-728-9764).

23.     In the event that any Counterparty to an Additional Assumed Contract fails to timely serve an Assumption Objection prior to the Assumption Objection Deadline, then such Counterparty shall be deemed to have (i) consented to such Cure Amount, if any, and to the assumption and assignment of the Additional Assumed Contract, (ii) agreed that the Buyer has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (iii) agreed that all defaults under the Additional Assumed Contracts arising or continuing prior to the assignment have been cured as a result or precondition of the assignment, such that the Buyer or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment, the Additional Assumed Contract shall remain in full force and effect for the benefit of the Buyer and the Counterparty in accordance with its terms, (iv) permanently waived any right to terminate the Additional Assumed Contract or designate an early termination date under the applicable Additional Assumed Contract as a result of any default that occurred and/or was continuing prior to the assignment date and (v) agreed that the terms of the Sale Order shall operate to assign the Additional Assumed Contract to the Buyer (the "Effects of Assignment").

24.     In the event that an Assumption Objection is timely filed by the Assumption Objection Deadline, the Counterparty and the Debtors shall attempt to resolve such objection

consensually. If the Debtors and the Counterparty are unable to consensually resolve any timely served objection on or before 4:00 p.m. (prevailing Eastern Time) on September 10, 2009, then the objecting Counterparty or the Debtors may seek the intervention of the Court to settle the dispute by filing a formal request for a hearing no later than 12:00 p.m. (prevailing Eastern Time) September 14, 2009 and such dispute will be resolved by the Court at the omnibus hearing presently scheduled for September 22, 2009 at 11:30 a.m. (prevailing Eastern Time). If the parties are able to consensually resolve the Assumption Objection, the Effects of Assignment shall apply to the Counterparty to such Additional Assumed Contract.

Transfer and Assignment of Bank Accounts

25.     After first wiring or otherwise transferring to the Wachovia Concentration Account, any cash remaining in the Transferred Bank Accounts (as defined below) as of the date of the Closing, the Debtors' banks, as applicable, are hereby authorized and directed to transfer and assign to the Buyer all rights of the Sellers as the holders of the following bank accounts (collectively, the "Transferred Bank Accounts"), and designate the Buyer as the holder of the Transferred Bank Accounts:  (a) the depository account at JP Morgan Chase / Bank One with the account number ending in 7012; (b) the depository account at Regions Bank with the account number ending in 6927; (c) the lockbox account at Wachovia Bank with the account number ending in 3188; (d) the depository account at Wachovia Bank with the account number ending in 3201; (e) the depository account at Wells Fargo Bank with the account number ending in 9679; (f) the lockbox at Wachovia Bank number 75586; and (g) the lockbox account at Wachovia Bank numbered 79508.

26.     Upon the Closing, the Transferred Bank Accounts transferred and delivered to the Buyer shall be free and clear of all Liens (including, without limitation, all Retained Liabilities)

of any person or entity that encumber or relate to or purport to encumber or relate to the Transferred Bank Accounts, other than Permitted Liens. Further, any deposit account control agreements with a depositary institution in respect of any Transferred Bank Account shall automatically terminate and be of no further force or effect, and no secured party under such control agreements, including the Debtors' prepetition secured lenders, shall have any further right to originate instructions concerning any Transferred Bank Account. Any previous notice of exclusive control (or the equivalent thereof) delivered under any such control agreements by any secured party, including the Debtors' prepetition secured lenders, to any such depositary institution shall be deemed to be of no further force and effect and the obligations of the depositary institution thereunder with respect to the operation and maintenance of such Transferred Bank Account after the receipt of any such previous notice of exclusive control shall terminate.

Transition Services Agreement and Access to Books and Records

27.     Proliance is hereby authorized to enter into that certain Transition Services Agreement, dated as of August 14, 2009, between Proliance, Centrum Equities Acquisition, LLC, Vista Automotive Acquisition, LLC and HD Branch Acquisition, LLC (the "Transition Services Agreement"). The Debtors are authorized to take any actions as may be necessary, desirable or appropriate to effect, implement and/or consummate the Transition Services Agreement.

28.     In accordance with the Transition Services Agreement, the Buyer shall, upon request by the Debtors, provide the Debtors with access to all of the Debtors' books, records and computer systems for the purpose of winding down their respective businesses.

Additional Provisions

29. The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming or consummating any plan of reorganization of the Debtors, or (b) converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Debtors, the Buyer and their respective successors and permitted assigns.

30. Each and every federal, state and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

31. All entities which are currently, or as of the Closing of the Sale Transaction may be, in possession of some or all of the Purchased Assets, are hereby directed to surrender possession of the Purchased Assets to the Buyer upon the Closing of the Sale Transaction.

32. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these cases or the consummation of the Sale Transaction.

33. At Closing, the Buyer will pay to the Debtors the Cash Purchase Price of $15,020,089.64, less the Initial Escrow Deposit and the Salary Continuation Amount. The Debtors have agreed to pay Buyer the amount of cash collected from customers by the Debtors for the week of August 10th that exceeds $2,128,000.00 (such excess, the "Excess Cash"). Two

business days following the Closing, the parties have agreed to net the Salary Continuation Amount against the Excess Cash and pay the difference to Buyer (if such amount is positive) or Debtors (if such amount is negative), as applicable.

34.     Pursuant to paragraph 7 of the Final Order (I) Authorizing Use of Cash Collateral; (II) Granting the Prepetition Lenders Adequate Protection; and (III) Granting Related Relief (Docket No. 136) (the "Final Cash Collateral Order"), upon the Closing, the Debtors shall fund the Wind-Down Account (as defined in the Final Cash Collateral Order) in the amount of $5,600,000.00 from the proceeds of the sale and the Professional Fee Account (as defined in the Final Cash Collateral Order) out of collections received at or prior to the Closing, and not from proceeds upon the Closing of the sale, and pay the remaining proceeds from the Closing of the Sale Transaction (excluding the Salary Continuation Amount) to the Prepetition Agent, subject in all respects to the provisions of paragraph 18 of the Final Cash Collateral Order.

35.     The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

36.     Nothing contained in any order of any type or kind entered in these chapter 11 cases or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.  Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of an order confirming any plan of reorganization or liquidation for the Sellers or the conversion of the Sellers' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code.

37.     To the extent, if any, anything contained in this Order conflicts with a provision in the Purchase Agreement, this Order shall govern and control.

38.     The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

39.     This Court retains jurisdiction, even after the dismissal or conversion of these chapter 11 cases, to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith, (b) protect the Buyer, or any of the Purchased Assets and the Assumed Contracts, from and against any of the Liens, (c) compel delivery of all Purchased Assets and the Assumed Contracts to the Buyer; (d) resolve any disputes arising under or related to the Purchase Agreement or the Sale Transaction, or the Buyer's peaceful use and enjoyment of the Purchased Assets and the Assumed Contracts; (e) adjudicate all issues concerning (alleged) pre-Closing Liens and any other (alleged) interest(s) in and to the Purchased Assets and the Assumed Contracts, including the extent, validity, enforceability, priority and nature of all such (alleged) Liens and any other (alleged) interest(s); (f) adjudicate any and all issues and/or disputes relating to the Debtors' right, title or interest in the Purchased Assets and the Assumed Contracts and the proceeds thereof, the Motion and/or the Purchase Agreement; and (g) adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assumed Contracts and the Buyer's rights and obligations with respect to such assignment and the existence of any default under any Assumed Contract.

40.     This Order constitutes an authorization of conduct by the Debtor and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state. The failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

41.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Sellers, all non-Debtor parties to the Sellers' executory contracts and unexpired leases, all successors and assigns of the Buyer, the Sellers and their affiliates and subsidiaries, the Purchased Assets, and any subsequent trustees appointed in the Sellers' chapter 11 cases or upon a conversion to chapter 7 cases under the Bankruptcy Code and shall not be subject to rejection.

42.     The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Purchase Agreement and each and every provision, term and condition thereof be, and therefore is, authorized and approved in its entirety.

43.     The provisions of this Order are nonseverable and mutually dependent.

44.     This Court shall retain jurisdiction to, inter alia, interpret and enforce the terms and provisions of this Order and the Purchase Agreement and to adjudicate, if necessary, any and all disputes concerning the Assumption, any right, title, (alleged) property interest, including ownership claims, relating to the Purchased Assets and the Assumed Contracts and the proceeds thereof, as well as the extent, validity and priority of all Liens relating to the Purchased Assets and the Assumed Contracts.

45.    The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten days are hereby waived, and this Order shall be effective immediately upon entry thereof.

Dated:    Wilmington, Delaware
          August 13, 2009

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE