IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
:
In re : Chapter 11
:
PROLIANCE INTERNATIONAL, INC., *et al.*,[1] : Case No. 09-12278 (CSS)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------x

## ORDER AUTHORIZING AND APPROVING (I) THE SALE OF THE STOCK OF THE DEBTORS' WHOLLY-OWNED SUBSIDIARY, NEDERLANDSE RADIATEUREN FABRIEK B.V., FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (II) RELATED RELIEF[2]

Upon the motion of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, 9007 and 9014 (the "Bankruptcy Rules") and Local Rule 6004-1 of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order authorizing and approving, among other things, the sale of all of the issued and outstanding equity interests (the "NRF Stock") of Debtor Aftermarket Delaware Corporation's ("Aftermarket") wholly-owned subsidiary, Nederlandse Radiateuren Fabriek B.V. ("NRF"), free and clear of all liens, claims

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Proliance International, Inc. (7383); Aftermarket Delaware Corporation (9862); Aftermarket LLC; and Proliance International Holding Corporation (9275). The address of each of the Debtors is 100 Gando Drive, New Haven, Connecticut 06513.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

NYI-4242121v10
RLF1 353997lv.1

and encumbrances and related relief (Docket No. 521) (the "Motion")[3] and the Amended Order (I) Approving Bid Procedures for the Sale of the Stock of the Debtors' Wholly-Owned Subsidiary, Nederlandse Radiateuren Fabriek B.V., (II) Authorizing the Debtors to Offer Certain Bid Protections and (III) Scheduling Final Sale Hearing and Approving Form and Manner of Notice Thereof (Docket No. 564) (the "Bid Procedures Order"); and it appearing that due and appropriate notice of the Motion, the Bid Procedures Order, the Bid Procedures, the Auction and the Sale Hearing having been given; and it appearing that no other notice of the relief granted by this Order need be given; and the Court having conducted a hearing on the Motion on February 19, 2010 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Debtors and Pension Benefit Guaranty Corporation (the "PBGC") having agreed to resolve PBGC's response to the Motion (Docket No. 552) (the "PBGC Response") on the terms set forth herein; the Debtors having conducted a marketing process in compliance with the Bid Procedures Order and determined that the Successful Bidder has submitted the highest and best bid for the NRF Stock; and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the Sale Transaction and the Purchase Agreement; and this Court being fully advised in the premises; this Court, based upon the arguments, testimony and evidence presented to it, hereby makes the following findings of fact and conclusions of law:

A. This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Purchase Agreement (as defined below), a copy of which is attached as Exhibit A hereto.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.     This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.     The statutory predicates for the Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014 and Local Rule 6004-1.

E.     The NRF Stock is property of Debtor Aftermarket's estate and title thereto is vested in Aftermarket.

F.     As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction and the Bid Deadline as approved herein has been provided in accordance with Bankruptcy Rules 2002, 6004, 9007 and 9014, (ii) such notice was good, sufficient and appropriate under the circumstances and (iii) no other or further notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction or the Bid Deadline as provided herein is necessary or shall be required.

G.     A reasonable opportunity to object or be heard with respect to the Motion and the Sale Transaction has been afforded to all interested persons and entities, including, without limitation: (i) the U.S. Trustee, (ii) counsel to Mentha Capital Vintage Year II B.V., (iii) counsel for the Committee, (iv) counsel to the Debtors' prepetition secured lenders, (v) all entities known

by the Debtors to have expressed an interest in acquiring the NRF Stock in the previous calendar year, (vi) all entities known to have asserted any Encumbrance upon the NRF Stock, (vii) the United States' Attorney's Office, (viii) the United States Department of Justice, (ix) the Securities and Exchange Commission, (x) the Internal Revenue Service, (xi) PBGC and (xii) all other parties who filed requests for notice under Bankruptcy Rule 2002 in these cases.

H. Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion and required by the Sale Hearing Order, and such notice is reasonable and adequate.

I. The process for the sale of the NRF Stock was conducted in accordance with the Bid Procedures Order. At the conclusion of the Auction, Banco Products (India) Ltd. was deemed the Successful Bidder with the highest and best offer for the NRF Stock. The form of the purchase agreement with the Successful Bidder (the "Purchase Agreement") is attached hereto as Exhibit A.

J. The Auction was conducted in accordance with the Bid Procedures Order. The Auction was conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the NRF Stock.

K. The Successful Bidder is purchasing the NRF Stock in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

L. The Purchase Agreement was negotiated, proposed and entered into by Aftermarket and the Successful Bidder without collusion, in good faith and from arms'-length bargaining positions. Neither Aftermarket nor the Successful Bidder have engaged in any

conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

M. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bid Procedures and to submit an offer for the NRF Stock.

N. The Successful Bidder is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

O. The consideration provided by the Successful Bidder for the NRF Stock pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the NRF Stock, (iii) will provide a greater recovery for all of the Debtors' stakeholders than would be provided by any other practical available alternative and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

P. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring Aftermarket to enter into the Purchase Agreement and sell the NRF Stock under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their estates and their creditors.

Q. The marketing and bidding processes implemented by the Debtors and their advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the NRF Stock.

R.  Aftermarket has full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase Agreement, to perform its obligations therein and to consummate the Sale Transaction. No additional consents or approvals, including that of the Works Council — which has already given positive advice with respect to the Sale Transaction, are necessary or required for Aftermarket to enter into the Purchase Agreement, perform its obligations therein and consummate the Sale Transaction.

S.  The Successful Bidder would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, the Debtors' estates and the Debtors' creditors, if the NRF Stock were not sold to it free and clear of all Encumbrances or if the Successful Bidder would, or in the future could, be liable for any Encumbrances against the NRF Stock.

T.  Not selling the NRF Stock free and clear of all Encumbrances would adversely impact the Debtors' estates, and the sale of the NRF Stock other than one free and clear of all Encumbrances would be of substantially less value to the Debtors' estates.

U.  The sale of the NRF Stock outside of a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.

V.  The provisions of section 363(f) of the Bankruptcy Code have been satisfied. All holders of Encumbrances, if any, who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction.

W.　In settlement of the Committee's potential objections to the Motion and the provisions of finding X below, Silver Point Finance, LLC, as agent to the Debtors' prepetition secured lenders (the "Prepetition Agent"), has agreed to carve out $410,000 (the "Committee Carveout") of the Gross Proceeds (as defined below). The Debtors and the Committee have further agreed that the funds representing the Committee Carveout will be deposited in a segregated account to be held by the Debtors at a financial institution on the approved depository list of the Office of the United States Trustee (the "Creditors Account") for the benefit of the Debtors' administrative and unsecured creditors to be distributed in accordance with the Bankruptcy Code's priority scheme as provided in paragraph 18 of this Order.

X.　No complaint asserting any Claim or Defense (as such terms are defined in this Court's Final Order (I) Authorizing Use of Cash Collateral; (II) Granting the Prepetition Lenders Adequate Protection; and (III) Granting Related Relief (Docket No. 136) (the "Final Cash Collateral Order")) was filed within the time period provided in the Final Cash Collateral Order, and any and all Claims and Defenses therefore shall be deemed to have been forever released, relinquished and waived as to the Committee and all parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1.　The relief requested in the Motion is granted and approved in all respects. Aftermarket is hereby authorized to enter into the Purchase Agreement, substantially in the form attached hereto as Exhibit A, and the Sale Transaction is hereby approved in all respects. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2. The Debtors are authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction in accordance with the Motion, the Purchase Agreement and this Order, (b) perform, consummate, implement and close fully the Sale Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and (c) pay the Break-Up Fee and Expense Reimbursement to Mentha Capital Vintage Year II B.V. in the amount of EUR 600,000 upon Completion.

3. Those holders of Encumbrances and other non-Debtor parties who did not object, or who withdrew their objections to entry of this Order, the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction and the Purchase Agreement are deemed to have consented to this Order, the Bid Procedures Order, the Sale Transaction and the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Successful Bidder, its affiliates, or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors or any of their affiliates. Those holders of Encumbrances and other non-Debtor parties who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert a Encumbrance.

<u>Sale and Transfer of the NRF Stock</u>

4. Upon Completion, the NRF Stock transferred, sold and delivered to the Successful Bidder shall be free and clear of all Encumbrances of any person or entity. The transfer of the NRF Stock to the Successful Bidder constitutes a legal, valid and effective transfer

of the NRF Stock and shall vest the Successful Bidder with all right, title and interest of Aftermarket in and to the NRF Stock. Except as otherwise provided in this Order, this Order does not transfer the assets of NRF free and clear of any liens, claims and encumbrances thereon.

5. Upon Completion of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the NRF Stock pursuant to the terms of the Purchase Agreement.

6. Effective on the date of entry of this Order, all entities, including, but not limited to, the Debtors, creditors, employees, former employees and shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Encumbrance against the NRF Stock, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Successful Bidder as alleged successor or otherwise with respect to any Encumbrances on or in respect of the NRF Stock.

7. Each and every term and provision of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including, but not limited to, Aftermarket, the other Debtors, the Successful Bidder, creditors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including but not limited to persons asserting any Encumbrance against or interest in the Debtors' estates or the NRF Stock, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

8. All entities holding Encumbrances of any kind and nature against the NRF Stock hereby are barred from asserting such Encumbrances against the Successful Bidder and/or the NRF Stock and, effective upon the transfer of the NRF Stock to the Successful Bidder upon Completion, the Encumbrances shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as against the NRF Stock.

9. This Order (a) is and shall be effective as a determination that, upon Completion, all Encumbrances existing as to the NRF Stock conveyed to the Successful Bidder have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Encumbrances attaching automatically to Gross Proceeds in the same manner and priority, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the NRF Stock conveyed to the Successful Bidder. All Encumbrances of record as of the date of this Order shall be removed and stricken as against the NRF Stock in accordance with the foregoing. All entities are authorized and specifically directed to strike all such recorded Encumbrances against the NRF Stock from their records, official or otherwise.

10. If any person or entity which has filed financing statements, mortgage, lis pendens or other documents or agreements evidencing Encumbrances on the NRF Stock shall not have delivered to the Debtors prior to Completion, in proper form for filing and executed by the

appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to the NRF Stock, the Debtors are hereby authorized and directed upon Completion, and the Successful Bidder is hereby authorized upon Completion, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the NRF Stock. Upon Completion of the Sale Transaction, each of Aftermarket's creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Encumbrances against the NRF Stock.

11. Upon Completion, the Successful Bidder shall not be deemed to be (a) a successor to Aftermarket or any of the other Debtors, (b) a de facto merger of the Successful Bidder and Aftermarket or any of the other Debtors or (c) a mere continuation of Aftermarket or any of the other Debtors. Without limiting the generality of the foregoing, and except as specifically provided in the Purchase Agreement, the Successful Bidder shall not be liable for any claims against Aftermarket, any of the other Debtors or any of their predecessors or affiliates, other than as expressly provided for in the Purchase Agreement.

The PBGC Response

12. PBGC shall be paid $165,000 (the "PBGC Amount") by the Debtors from the proceeds of the sale of the NRF Stock on the Completion Date.

13. In consideration of (a) the payment to PBGC set forth in paragraph 12 above and (b) the agreement among the Debtors and PBGC to continue, in good faith, ongoing discussions to expeditiously settle PBGC's various claims against the Debtors' estates, which such claims shall be calculated in accordance with ERISA and applicable regulations, any and all claims,

liens and encumbrances of PBGC against NRF, NRF's direct or indirect subsidiaries and/or any of such entities' assets are released and extinguished in their entirety, and PBGC agrees not to pursue collection and not to assert any claims in the future against the Successful Bidder, NRF or Silver Point or any of their respective direct or indirect subsidiaries as of the Completion Date or in the future arising from or in connection with the Proliance International, Inc. Pension Plan and the Proliance International, Inc. Bargaining Unit Pension Plan, including without limitation, termination premiums under section 4006(a)(7) of ERISA (29 U.S.C. 1306(a)(7)).

14. In consideration of the payment of the PBGC Amount and the other agreements set forth in paragraphs 12 and 13 above, the PBGC Response is hereby deemed withdrawn with prejudice.

Additional Provisions

15. The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming or consummating any plan of reorganization of the Debtors, (b) converting the Debtors' cases from chapter 11 to chapter 7, (c) dismissing the Debtors' bankruptcy cases or (d) appointing a chapter 11 trustee or examiner, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Debtors, the Successful Bidder, any chapter 11 or chapter 7 trustee, and their respective successors and permitted assigns.

16. Each and every federal, state and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

17. Subject to the occurrence of Completion, the Successful Bidder will pay to the Debtors the Purchase Price, less the Deposit. The consideration provided by the Successful Bidder for the NRF Stock under the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

18. Absent further order of this Court, the Debtors shall not transfer or utilize any of the funds maintained in the Creditors Account.

19. Upon Completion, and in addition to the PBGC Amount and the Committee Carveout, the Debtors are authorized to retain an amount up to the Permitted Amounts (as defined below) from the purchase price paid by the Successful Bidder (the "Gross Proceeds"), in each case to pay the following costs and/or expenses (collectively, the "Permitted Items"), which amounts are exclusive of the PBGC Amount and the Committee Carveout: (a) any success, transaction or similar fee to which TM Capital Corp. and Holland Corporate Finance N.V. are entitled to be paid under the terms of the applicable orders entered by the Court prior to the date hereof approving such professionals' retention (collectively, the "Success Fee"); (b) the reasonable fees, costs and expenses of any other professionals retained by the Debtors or the Committee and incurred through and including the date of consummation of the sale, as well as the reasonable legal fees, costs and expenses for the post-closing transition period in the amount set forth in the budget agreed to between the Debtors and the Prepetition Agent (the "Budget"), in each case to the extent allowed by the Court; (c) allowed administrative expenses pursuant to 28 U.S.C. § 1930; (d) pre- and post-closing wind-down and other expenses incurred by the

Debtors in accordance with and up to the amounts set forth in the Budget; and (e) $50,000 for the payment of the fees and expenses of any chapter 7 trustee appointed in these cases. For purposes of the preceding sentence, "Permitted Amounts" shall mean (a) $555,000, plus (b) the amount (not to exceed $160,000) by which the proceeds received by the Debtors prior to the Completion Date as a result of the Texas claim (relating to overbilling by the temp agency engaged by the Arlington facility) are less than $160,000 (the "Texas Amounts"), plus (c) the reasonable legal fees, costs and expense of Van Doorne N.V. incurred prior to and after the date hereof through consummation of the sale, up to an aggregate amount not to exceed $215,000, plus (d) other proceeds received by the Debtors that are not (i) included in the purchase price from the sale or (ii) reflected as expected proceeds in the Budget, up to an aggregate not to exceed $100,000, plus (e) an amount equal to the Success Fee. Upon Completion, the Debtors shall pay the Gross Proceeds, less the Break-Up Fee and Expense Reimbursement, less the Permitted Amounts, less the PBGC Amount, less the Committee Carveout, to the Prepetition Agent and, after the payment in full of all Permitted Items from the Permitted Amounts (whether at or after Completion) and the payment in full of such items as may be paid from the Professional Fee Account and the Wind-Down Account (to the extent and as defined in the Final Cash Collateral Order (the "Prior Permitted Amounts")) (whether at or after Completion), the Debtors (and, if applicable, any chapter 11 or chapter 7 trustee that may be appointed in these cases) shall promptly pay any portion of (x) the Permitted Amounts (as well as any of the Texas Amount received after the Completion Date) and (y) the Prior Permitted Amounts then remaining to the Prepetition Agent. On or before 5:00 pm (EST) Wednesday of each week, the Debtors shall provide to the Prepetition Agent a schedule of disbursements for the prior week.

20. Nothing contained in any order of any type or kind entered in these chapter 11 cases or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order. Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of an order confirming any plan of reorganization or liquidation for the Debtors, the conversion of the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code or the dismissal of the Debtors' bankruptcy cases.

21. To the extent, if any, anything contained in this Order conflicts with a provision in the Purchase Agreement, this Order shall govern and control.

22. The Successful Bidder is purchasing the NRF Stock in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision. The consideration provided by the Successful Bidder for the NRF Stock is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

23. To the extent that the Successful Bidder and the Debtors do not consummate the Sale Transaction as provided in the Purchase Agreement, each and every provision of this Order and the Purchase Agreement shall automatically apply to a Sale Transaction with the Back-Up Bidder, which the Debtors shall be authorized, but not directed, to consummate without further order of the Court, as provided in the Bid Procedures Order and the Bid Procedures.

24. This Court retains jurisdiction, even after conversion of these chapter 11 cases to cases under chapter 7, to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the Purchase

Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith; (b) protect the Successful Bidder and the NRF Stock from and against any of the Encumbrances; (c) resolve any disputes arising under or related to the Purchase Agreement or the Sale Transaction; (d) adjudicate all issues concerning (alleged) pre-Completion Encumbrances and any other (alleged) interest(s) in and to the NRF Stock, including the extent, validity, enforceability, priority and nature of all such (alleged) Encumbrances and any other (alleged) interest(s); and (e) adjudicate any and all issues and/or disputes relating to the Debtors' right, title or interest in the NRF Stock, the Motion and/or the Purchase Agreement. In accordance with the Purchase Agreement, following the dismissal of the Debtors' bankruptcy cases, exclusive jurisdiction over any and all disputes under or in connection with the Purchase Agreement shall vest in the competent court in Amsterdam, the Netherlands.

25. From and after the date hereof, the Debtors shall act in accordance with the terms of the Purchase Agreement and the Debtors, to the extent they have not already done so, shall execute the Purchase Agreement at or prior to Completion.

26. This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state. The failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

27. Consistent with, but not in limitation of the foregoing, each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

28. This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all successors and assigns of the Successful Bidder, the Debtors and their affiliates and subsidiaries, the NRF Stock, and any subsequent trustees appointed in the Debtors' chapter 11 cases or in any chapter 7 case or upon (a) a conversion of these chapter 11 cases to cases under chapter 7 or (b) dismissal of the Debtors' bankruptcy cases.

29. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Purchase Agreement and each and every provision, term and condition thereof be, and therefore is, authorized and approved in its entirety.

30. The provisions of this Order are nonseverable and mutually dependent.

31. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Purchase Agreement, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

32. This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, or otherwise.

Dated: Wilmington, Delaware
February __, 2010

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE